UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **United States of America,**<br><br>v.<br><br>**Dylan Young,**<br><br>Defendant. | **Case No. 1:19-CR-416 (EGS)** |

**SUPPLEMENTAL BRIEFING TO ADDRESS THE EFFECTS OF THE FINDINGS IN BANKS V. BOOTH ON DYLAN YOUNG'S CLAIM UNDER THE FIFTH AMENDMENT**

Mr. Dylan Young, through counsel, respectfully moves to supplement his Motion for Release From Custody Due to Global Pandemic COVID-19 [ECF 37] and renews his request that this Court order his immediate release from custody pursuant to the Fifth Amendment to the United States Constitution. This Supplement is filed pursuant to the Court's Minute Order of April 27, 2020, in which the Court ordered counsel for Mr. Young to supplement [ECF 37] by May 4, 2020, and to specifically address what effects the findings of the Court in *Banks v. Booth*, No. CV 20-849(CKK), 2020 WL 1914896 (D.D.C April 19, 2020) have on Mr. Young's Fifth Amendment Claim made therein. Counsel hereby incorporates and adopts all arguments made in [ECF 37] and further states the following:

1. On March 30, 2020, Plaintiffs in *Banks v. Booth*, filed an Application For Temporary Restraining Order ("TRO") and a Motion For Preliminary Injunction seeking to stop the Defendants from continuing to violate the Fifth and Eighth Amendment rights of Plaintiffs, and all members of the class for which they seek to certify and represent, by failing to take necessary measures to protect them against infection with the COVID-19 virus and the likely resulting illness or death.

1

2.   On March 30, 2020, Plaintiffs' Motion For Class Certification And Appointment Of Class Counsel was also filed. The proposed class would consist of "all persons confined or to be confined in the D.C. Department of Corrections ("DOC") Central Detention Facility ("CDF") or Correctional Treatment Facility ("CTF"). Persons confined pre-trial and persons confined pursuant to a judgment of conviction were to make up a potential subclass pursuant to Plaintiffs requests.

3.   On April 7, 2020, undersigned counsel filed a Motion for Release From Custody Due to Global Pandemic COVID-19, requesting relief pursuant to 18 U.S.C. §3142 and the Fifth and Eighth Amendments to the United States Constitution, on behalf of Mr. Dylan Young. The government filed its Memorandum in Opposition on April 12, 2020.

4.   Dylan Young is currently confined pre-trial and is a member of one of the subclasses should the class action be certified.

5.   On April 19, 2020, United States District Court Judge Kollar-Kotelly issued an Order and Memorandum Opinion granting in part, and denying, in part, Plaintiffs' Motion for TRO.

6.   On April 27, 2020, this Court issued a minute order denying in part, and holding in abeyance, in part, Mr. Young's Motion for Release From Custody Due to Global Pandemic COVID-19, and directed counsel to file further briefing regarding the effects of the findings of the Court in *Banks v. Booth*, No. CV 20-849(CKK), 2020 WL 1914896 (D.D.C April 19, 2020) on Mr. Young's Fifth Amendment Claim.

## DISCUSSION OF FINDINGS OF THE COURT IN *BANKS V. BOOTH*

*Banks v. Booth* is a case brought in the United States District Court for the District of Columbia in which several DOC inmates, detained at CDF and CTF sought TRO relief for inadequate conditions of confinement pursuant to the Fifth and Eighth Amendments to the United States Constitution. Because of the Court's directive and due to the fact that Mr. Young is detained pre-trial, only matters related to the Fifth Amendment due process clause violations will be discussed.

Citing *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982), the Court in *Banks* noted that pre-trial detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish" because they are presumed innocent unless proven guilty.

In making its factual findings, the Court had the benefit of appointed amici Grace Lopes and Mark Jordan, who were able to "provide information on the actual conditions at CTF and CDF and make findings on Defendants' responses to COVID-19." *Banks v. Booth*, No. CV 20-849(CKK), 2020 WL 1914896, slip op. 1, 2 (D.D.C April 19, 2020).

### I. Plaintiff's Established Factors Necessary For The Court To Grant Preliminary Injunctive Relief

On a motion for preliminary injunctive relief Plaintiffs had to clear an extremely high hurdle. Plaintiffs had to make a clear showing that they were likely to [1] succeed on the merits, likely to [2] suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tipped in their favor, and finally [4] that an injunction was in the interest of the public. *Banks v. Booth*, No. CV 20-849(CKK), 2020 WL 1914896 Slip Op. 1,3 (D.D.C. Apr. 19, 2020), (quoting *Amer v. Obama*, 742 F.3d 1023, 1038 (D.C.Cir. 2014)(quoting *Sherley v. Sebelius*, 644

F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.7, 20 (2008).

Pre-trial detainees need only demonstrate that the conditions complained of present an unreasonable risk to the Plaintiff's health in order to state a Fifth Amendment claim for inadequate conditions of confinement. *Id*. at 5. The additional, "deliberate indifference" showing necessary under the Eighth Amendment does not apply to pre-trial detainees. *Id*.

As noted above, the Court ultimately granted Plaintiffs request for a TRO, finding that the conditions at DOC facilities, CDF where Mr. Young is housed included, presented an unreasonable risk to the Plaintiffs health and that they were therefore likely to succeed on the merits, that Plaintiffs were likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest.

### A.   Unreasonable Risk to Plaintiff's Health

In *Banks*, pre-trial detained Plaintiffs Phillips and Smith established a clear record that jail conditions exposed them, and other similarly situated CDF and CTF inmates to an unreasonable risk of serious damage to their health. The Court found that it was an undisputed fact that as of April 4, 2020 (a mere 30 days before the instant filing) the infection rate in DOC facilities was over seven times the infection rate of the District of Columbia at large. *Id.* at 6. In a declaration submitted by Dr. Jamie Meyers' and relied upon by the Court, the record evinces that "individuals placed in [CDF and CTF] are at a significantly higher risk of infection with COVID-19 as compared to the population in the community and that they are at a significantly higher risk of harm if they do become infected." *Id.*

Additionally, the Court found that preventive/safety measures available to people who are detained are not the same as those measures available to those who are not detained.  The most notable unavailable safety measure to incarcerated inmates is that of social distancing.  Significantly, the Court found that the Defendants produced no evidence that CDF or CTF was able to effectively implement social distancing. To the contrary, an affidavit was submitted from a correctional staff member stating that social distancing was not happening on the unit in which she was stationed.  The Court ultimately found that there was not an acceptable social distancing policy in place that outlined the number of inmates allowed to use common areas at the same time, or steps taken to make sure that inmates maintain a suitable distance when in a shared space. *Id*.

The most recent available information revealed that upon their visit, Amici of the Court discovered that multiple inmates were consistently out of their cells at one time and sometimes in gross violation of recommended social distancing practices. *Id*. Amici also reported that social distancing practices were not enforced by correctional staff and that the Department of Corrections is understaffed thus making it difficult to enforce necessary precautionary measures. *Id.* Based on this report and other available information the Court found that the Plaintiff's would be able to show that they have been exposed to an unreasonable risk of damage to their health.  The Court then concluded that based on the unreasonable risk to Plaintiffs health, a likelihood of success on the merits of their due process claim had been established. *Id*. at 8.

**B.     Irreparable Harm**

The Court concluded that the Plaintiff's risk of contracting COVID-19 and the resulting complications, including the possibility of death, is the prototypical irreparable harm and that

5

Plaintiffs produced sufficient expert evidence by way of the affidavit of Dr. Jaimie Meyer that they are "at a significantly higher risk of infection with COVID-19 as compared to the population in the community" and "at a significantly higher risk of harm if they do become infected." *Banks v. Booth*, No. CV 20-849(CKK), 2020 WL 1914896, slip op. 1, 11 (D.D.C. Apr. 19, 2020). Notably, the Court specifically rejected the argument that "because Plaintiff's fail to make any showing of a specific injury that is not generalized to the inmate population, Plaintiffs fail to meet their burden of demonstrating irreparable harm." *Id*.

In finding that the Plaintiffs demonstrated irreparable harm, the Court credited Plaintiffs evidence that inadequate precautionary measures at CDF and CTF increased Plaintiffs risk of contracting COVID-19 and facing serious health consequences, including death. *Id*. Finally, the Court observed from the available data that the number of inmates testing positive for COVID-19 is growing daily.[1] *Id*.

### C. Balance of Hardships and the Public Interest Weigh in Plaintiff's Favor

The final two TRO factors, the balance of equities and the public interest were considered in tandem. After finding that the Plaintiffs were likely to prevail on the merits regarding to the Fifth Amendment claim, the Court noted that "its always in the public's interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012)(internal quotations omitted). As a result, the Court granted Plaintiffs request for TRO in part and denied it in part, taking significant actions to "prevent the violation of a party's constitutional rights."

---

[1] Although the Court's opinion is dated April 19, 2020, and based on information submitted before that date, as of the date of this filing Bureau of Prisons data still shows that the number of inmates testing positive for COVID-19 located at CDF and CTF continues to increase.

## II. EFFECT OF FINDINGS OF BOOTH ON MR. YOUNG'S FIFTH AMENDMENT CLAIM

The impact of the Courts ruling in *Banks v. Booth* on the analysis of Mr. Young's Fifth Amendment claim is tremendous. Although Mr. Young was not one of the Plaintiffs in that TRO action he is similarly situated in that he is now detained pre-trial at CDF and was detained at the time Plaintiffs filed for its TRO. At all relevant times Mr. Young was subject to and experienced conditions described by Amici in *Banks* while an inmate of CDF - conditions that Judge Kollar-Kotelly found were likely violative of Plaintiff's Fifth Amendment rights. Judge Kollar-Kotelly's ruling on this issue logically extends to Mr. Young as someone who is similarly situated to Plaintiffs in the *Banks* case. Judge Kollar-Kotelly's opinion and analysis is thorough in that in addition to elucidating the sub-standard detention conditions at CDF and CTF, it also sheds light on the unclear/inadequate policies and understaffing issues that D.C. DOC has been unable to address, two major factors that continue to contribute to the current conditions.

This Court can and should find that the Fifth Amendment findings made regarding the Plaintiffs in *Banks v. Booth* are applicable to Mr. Young and as a result find that Mr. Young's rights under the Fifth Amendment are currently being violated by punitive conditions of confinement that subject him to unreasonable health risks and inadequate access to medical care. The exact same factors considered in Booth must be specifically applied to Mr. Young's Fifth Amendment claim and require the remedy of release because the specific relief granted by Judge Kollar-Kotelly does not remedy Mr. Young's Fifth Amendment concerns.

### A. Continued Detention Poses an Unreasonable Risk to Mr. Young's Health

Amici in *Banks v. Booth* reported issues at CDF and CDF that Judge Kollar-Kotelly found to present an unreasonable health risk. Judge Kollar-Kotelly made this finding based in

large part on information that the infection rate at CDF and CTF is seven times that of the District at large and because of the inability of inmates to exercise precautionary measures available to those at liberty, such as social distancing. *Banks*, CV 20-849(CKK), 2020 WL 1914896 at 6.

Counsel urges this Court to adopt Judge Kollar-Kotelly's finding that CDF poses an unreasonable risk to Mr. Young's health for the reasons articulated by the Court in *Banks* and based on the additional factor that Mr. Young does have a preexisting medical condition, a comorbidity, that places him at a higher risk of developing severe complications from COVID-19 should he acquire the virus. Mr. Young's comorbidity coupled with Judge Kollar-Kotelly's finding of unreasonable risk to health while housed at CDF necessitates, if not mandates, a change in release conditions in order to protect his rights under the Fifth Amendment.

The evidence in the record is also clear that "inadequate precautionary measures at DOC facilities have increased the risk" that inmates, to include Mr. Young, will contract COVID-19 and face serious health consequences, including death. Again, Mr. Young's comorbidity makes the likelihood of contracting COVID-19 and eventually dying even more likely that the Plaintiffs in *Banks* who did not claim to have any preexisting health conditions that would likely to develop severe complications from COVID-19.

**B.     DOC Staffing is Insufficient to Guard Against Violations of Mr. Young's Fifth Amendment Rights**

Judge Kollar-Kotelly was also presented with data showing that "[t]he DOC has a current workforce of 994 funded correctional positions of which 45 positions are vacant. Of the 949 filled positions, 281 correctional staff were unavailable for duty as of April 16, 2020." *Banks*, CV 20-849(CKK), 2020 WL 1914896 at 7. The report does not address whether the 45

vacant positions will be filled anytime soon, nor does it discuss when, if ever, the "unavailable" 281 correctional officers will become available. Based on the data provided one can only deduce that the DOC is currently understaffed by 326 officers at a time when it is dealing with a novel institutional pandemic.

Amici found that this understaffing is at least partially responsible for DOC's failure to enforce social distancing. There continue to be new positive cases reported by D.C. DOC General Counsel even up until the time of this pleading. As of Sunday, May 3, 2020, there were 4 new positive cases and 53 total D.C. DOC residents who tested positive, housed in isolation at CDF. Four of the 53 positive cases had to be transported from CDF to local hospitals for treatment. *Id*.

## CONCLUSION

For the reasons stated herein and in Judge Kollar-Kotelly's April 19, 2020, Opinion, Mr. Young respectfully requests his release. Counsel respectfully submits that the issues raised: the high infection rate, the lack of precautionary policies, and the understaffing, have created an environment where Mr. Young's rights under the Fifth Amendment have already been violated. Judge Kollar Kotelly's Opinion makes that clear. Unfortunately these violations are not the type that can soon be remedied. For example, it is highly unlikely that the DOC will be able to hire and train sufficient staff to deal with its documented staffing issues in a manner to adequately address COVID-19 concerns.

Judge Kollar-Kotelly's Opinion did not address an issue presented in Mr. Young's case: the intersection between the likely violation of all inmates Fifth Amendment rights in DOC custody and inmates having preexisting health conditions. That specific analysis can only be addressed on a case by case basis. Mr. Young's case is seemingly different from that of the

Plaintiffs in that regard, because of his previously articulated preexisting health condition. Mr. Young respectfully renews his request for release on strict conditions. These conditions would include ankle monitoring and 24-hour home detention. This remedy is the only way to promote public health, protect Mr. Young, and ensure that his constitutional rights are protected during this national crisis.

Respectfully Submitted,

_____/s/_____

Joseph P. Caleb, Esq.
Bar No. 495383
CalebLaw, PLLC
1156 15th , N.W.
Washington, D.C.  20005
(202) 787-5792
E-mail:  jcaleb@bcrlawfirm.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by ECF, this 4th day of May, 2020 to the U.S. Attorney's Office, 555 4th Street, N.W., Washington, D.C. 20530, and to counsel of record.

/s/
_____
Joseph P. Caleb