# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 19-CR-416 (EGS)** |
| | : | |
| v. | : | |
| | : | |
| **DYLAN YOUNG,** | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of incarceration of 72 months (6 years) to be followed by 120 months (10 years) of supervised release, with the conditions recommended by United States Office of Probation. Additionally, the defendant is required by statute to register as a sex offender. In support of this memorandum and recommendation, the government relies on the following points and authorities, and such other points and authorities that may be cited at the sentencing hearing.

### I.      BACKGROUND

####         A.      Statement of Offense

Leading up to February 26, 2019, a detective with the Metropolitan Police Department ("UC") was acting in an undercover capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force operating out of a local office in Washington, D.C. In that capacity, the UC was ultimately invited to partake in a private group on

1

KIK[1] entitled "Taboo Parents" and made the UC a moderator of the group by another member of that group.

Between February 26 and March 27, 2019, "Taboo Parents" had dozens of members who entered into the group, including DYLAN CHARLES YOUNG (herein "YOUNG").

In the "Taboo Parents" KIK group, moderators and users discussed the sexual abuse of children and encouraged the members to post and share with "no limits." YOUNG was a group participant at this time. Also during this time, images and videos depicting child pornography were posted to the group by multiple users, including YOUNG, who posted child pornography to the group through KiK on his cellular telephone.

At 11:56AM EST on March 12, 2019, YOUNG posted a Mega.nz link to the group, prompting user "justmeag1" to respond "Wow. So hot." At that time, the UC reviewed the contents of the link provided by YOUNG and noted that the folder contained in the link was titled, "all" with other sub-files. The folder contained hundreds of videos depicting children as young as toddlers performing sexual acts.[2] These videos included but were not limited to:

1. a two minute and 31 second video file entitled "cp mg27.mp4," which depicted an adult female engaged in mouth to vagina contact with a female toddler;

2. an eight minute 46 second video file whose title begins "VID-20160221-WA00," which depicted an adult male penetrating the vagina of a prepubescent female child with his penis, and

3. a one minute and 25 second video entitled "cp fuck me.mp4" which depicted an adult male penetrating the vagina of a female toddler with his penis. There is an arrow drawn on the toddler's stomach pointing to her vagina.

---

[1] KIK is a freeware instant messaging mobile application where one can transmit and receive messages, photos, videos, sketches, mobile webpages, and other content. Users can communicate privately with other users or in groups.

[2] Pursuant to Sentencing Guidelines Section 2G2.2 application note 6, each video herein is considered to have 75 images or the purpose of applying the enhancement in Subsection 2G2.2(b)(7)

Later on the same date, YOUNG also sent the group several videos depicting adult women performing sexual acts on prepubescent children directly to the group. Examples of those videos are described as follows:

1. A video depicting an adult female engaged in mouth to penis contact with a male toddler;

2. A video depicting an adult female engaged in mouth to penis contact with a prepubescent male child who appears approximately 9 years old; and

3. A video depicting an adult female engaged in mouth to vagina contact with a female toddler.

After sending the videos, YOUNG made the following comment: "I fucking love watching moms play." In response to the videos, IVERSON commented "Love the last vid" and "Nice vid mmm."

FBI used administrative subpoena returns, law enforcement and open source databases to confirm the identity of "ohyes2756," as the defendant, Dylan YOUNG.

**B.    Procedural Posture**

The Defendant, Mr. Young, was initially arrested in his home state of Washington on an arrest warrant originating out of this Court for violations of 18 U.S.C. Section 2252(a)(2), Distribution of Child Pornography and 18 U.S.C. Section 2252(a)(2), (b)(1), Conspiracy to Receive and Distribute of Child Pornography.  He was removed to this jurisdiction, where he ultimately conceded detention and was ordered held without bond pursuant to 18 U.S.C. § 3142(f)(1)(A). Subsequently, the parties continued further hearings multiple times as the parties engaged in discovery and substantial plea negotiations. The parties ultimately reached a resolution to this case short of trial.  Pursuant to a signed plea agreement, the Defendant pled guilty on July 13, 2020 to One Count of Distribution of Child Pornography in violation of 18

U.S.C. Section 2252(a)(2) before your Honor and the case was originally set for sentencing in January 2021.

That sentencing date was continued <u>inter alia</u> to allow for the completion of the Defendant's pre-sentencing psychological examination and due to the ongoing COVID-19 pandemic. It is now set for May 27, 2021 before your Honor.

## II.     SENTENCING CALCULATION

### A. Statutory Penalties

The offense of Distribution of Child Pornography, in violation 18 U.S.C. § 2252(a)(2), carries a mandatory-minimum prison sentence of 5 years and a maximum sentence of 20 years imprisonment, a maximum fine of $250,000, and a term of supervised release of not less than five years and up to life pursuant to 18 U.S.C. § 3583.  <u>See</u> Presentence Investigation Report filed October 13, 2020 (ECF 49) ("PSR") ¶¶ 4, 5, 110, 115.  Pursuant to 18 U.S.C. § 3013(a)(2)(A), the defendant must pay a mandatory special assessment fee of $100 for each felony conviction payable to the Clerk of the United States District Court for the District of Columbia. <u>See</u> PSR ¶ 129.  The defendant must also register as a sex offender pursuant to 18 U.S.C. § 2250 and 34 U.S.C. §§ 20911(3), and 20915(a)(2).

### B. Sentencing Guidelines Range

All parties agree that the applicable Estimated Guidelines Range is 151 to 188 months incarceration. <u>See</u> PSR ¶¶ 4, 28-41, 111.  The base offense level is 22 pursuant to U.S.S.G. § 2G2.2(a)(2).  The parties agree that several specific offense characteristics apply: the offense involved a prepubescent minor or minors under the age of 12 (+2); the offense involved knowing distribution (+2); the offense involved depictions of sadistic and/or masochistic conduct (+4); the

offense involved the use of a computer or an interactive computer service (+2)); and the offense involved at least 600 images (+5). See id.

The defendant is entitled to a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Id. at ¶ 39. The government requests that the defendant's level be decreased by an additional point pursuant to § 3E1.1(b), as the defendant timely notified authorities of his intention to enter a guilty plea and thus permitted the government and the Court to preserve resources. Id at ¶ 40. With these adjustments, the defendant's total offense level is 34.

The defendant has a total criminal history score of one point. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of one establishes a criminal history category of I. With a total offense level of 34 and a criminal history category of I, the defendant's recommended guideline sentencing range is 151 to 188 months, and a supervised release range of 5 years to life, and an effective fine range of $35,000 to $250,000. PSR. ¶¶ 110, 111, 132. This offense also carries a mandatory minimum term of incarceration of 60 months.

### III.   GOVERNMENT'S RECOMMENDATION

**A.   Application of the Federal Sentencing Guidelines**

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United

States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.")  After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  Id.  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

    **B.**    **Basis for the Government's Recommendation**

Given the particular circumstances of this case, the government submits that a sentence of 72 months incarceration, to be followed by 120 months supervised release, and the specific conditions of supervision recommended by the United States Office of Probation is appropriate and warranted based on the factors outlined in 18 U.S.C. § 3553(a).  The recommended sentence, which is significantly below the low end of the estimated sentencing guideline range but above the mandatory minimum, is sufficient, but not greater than necessary to accomplish the purposes of sentencing.  Given the serious nature of the Defendant's conduct in this case and his risk to the community, balanced against his relative lack of criminal history, and early acceptance of responsibility, the government believes this is an appropriate sentence.

1.      **Nature and Circumstances of the Offense**

The defendant's distribution of child pornography is a serious, violent offense, and not just because of Congress' designation of it as such and imposition of a five-year mandatory minimum term of incarceration.  As many courts have recognized, "[It is an] undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way." United States v. Miller, 665 F.3d 114, 123 (5th Cir. 2011).

Moreover, the defendant here did more than "merely" distribute a small amount of child pornography or do so on a single occasion. Rather, actively encouraged others to send child pornography, he commented approvingly on child pornography (including those featuring the sexual abuse of toddlers) and his distributed a total of hundreds of child pornography files, both through a megalink, and through videos sent directly to the "Taboo Parents" group.

**2. Defendant's History and Characteristics**

The Government notes that the Defendant has virtually no criminal history, and this was certainly a consideration in the Government's plea agreement and allocution herein. However, as the Court is well aware, a lack of criminal history is common in child pornography cases and often does not tell the whole story. Defendants in these cases often possess positive characteristics and carry on a "normal" life a manner that obscures the danger they present. Likewise, the electronic-based nature of their criminal offense often allows them to more easily evade detection and engage in criminal behavior for a longer period than is reflected in their criminal history.

The defendant appears to fit this mold to some extent. While his criminal history evidences some apparent struggles with alcohol and/or drugs, his circumstances also show that he was able to build a life and relationships (including a current relationship with someone with multiple children) while those around him remained unaware of his criminal behavior.

The government is also concerned that although the defendant has agreed to plead guilty, he has not truly taken full responsibility for his actions.  Specially, the psychosexual examination report states that during that examination Mr. Young denied being aroused by (or even desiring to see) child pornography, and stated that he said that he joined the group only "to partake in a personal investigation into why people look for child pornography." *See* Psychosexual Report and Risk Evaluation dated April 5, 2021 at 3.  This does not appear to the government to be credible and it does not explain why Mr. Young would comment approvingly on child pornography showing sexual abuse of young children/toddlers with comments such as ""I fucking love watching moms play " or why he would himself distribute multiple videos.  Until Mr. Young is able to be truthful to himself and others about his behavior, the government remains concerned that he cannot truly reform and will present an increased risk of recidivism going forward.

**3. Punishment, Deterrence, Protection, and Correction**

The sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

8

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses. The defendant's distribution of child pornography is harmful to society at large, as well as the specific child victims, and warrants a substantial sentence of imprisonment. As a matter of general deterrence, a sentence of incarceration signals that trafficking in child pornography represents a serious crime that cannot be tolerated. As a matter of specific deterrence, a prison sentence is appropriate and necessary to deter the defendant from committing future child exploitation crimes.

As to the specific term of 72 months incarceration recommended, the Government believes that this is an appropriate sentence on balance. On the one hand, the defendant has virtually no criminal history and agreed to plead guilty early, which supports leniency. Moreover, the government recognizes the Court's arguments regarding the sentencing guidelines for child pornography offenses. On the other hand, the distribution of large quantities of child pornography (including sadistic/masochistic videos and videos depicting infants and toddlers) as well the affirmative discussion of child sex abuse warrants more a serious penalty. This is all the more so because defendant has not truly expressed remorse or taken full responsibility for his actions. The Government would also note that a sentence of 72 months would be broadly consistent with the sentences given to others within the Taboo Parents group, including in U.S. v. Bennet (19-CR-283) wherein your honor sentenced the defendant to 71 months incarceration and in U.S. v. McGarrah (20-CR-42) wherein the Honorable Judge Bates sentenced the defendant to 72 months incarceration.

Furthermore, a term of 10 years supervised release, with specific conditions recommended by the probation office, is crucial to ensuring that the defendant receives the

treatment and support he needs to make further attempts to ensure that he does not commit similar offenses in the future.

### 4. Available Sentences

The defendant should be sentenced to a term of incarceration, as he is ineligible for probation because it is expressly precluded by the statute. In addition, the court should impose a term of supervised release to ensure that the defendant does not re-offend. The conditions of supervised release should include: sex offender evaluation and treatment, restrictions on direct contact with minors, monitoring of the defendant's use of the Internet, computers, and any other Internet-capable devices, as well as any other special conditions recommended by the United States Office of Probation in the PSR and at sentencing.

## CONCLUSION

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 72 months, to be followed by 10 years of supervised release, with the recommended conditions of supervision. The defendant is further required by statute to register as a sex offender.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

_____/s/_____
Nicholas Miranda
Assistant United States Attorney
D.C. Bar 995769
555 4th Street, N.W., Room 4-233
Washington, D.C. 20530
(202) 252-7011
Nicholas.Miranda@usdoj.gov